**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**


| | | |
|---|---|---|
| In re ARLEN C. HAMPTON and | ) | Case No. 07-62119-LYN |
| PATRICIA M. HAMPTON, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |


**MEMORANDUM**

This matter comes before the court on a motion by Arlen C . Hampton and Patricia M.

Hampton ("the Debtors") to sell their residence and use a portion of the proceeds to pay in full

the balance owed pursuant to their confirmed chapter 13 plan.  The chapter 13 trustee does not

object to the motion to sell, but argues that if the motion is granted, the Debtors should be

required to pay their unsecured claims in full from the proceeds of the sale.   At the hearing on

this matter, the chapter 13 trustee made an oral motion to modify the Debtors' chapter 13 plan to

require the Debtors to make such a payment.

After the hearing, the parties lodged an agreed order permitting the Debtors to sell the

Real Property and place the funds in dispute in escrow pending the resolution of the chapter 13

trustee's motion to modify the plan.  The only matter now before the Court is the trustee's

1

motion to modify the plan.

### *Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This

proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A).   This Court may enter a final order.

This memorandum shall constitute the Court's findings of fact and conclusions of law as

required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P.

7052.

### *Facts*

On November 8, 2007, the Debtors filed the above styled-chapter 13 petition.  They

scheduled real property, their residence, commonly known as 1926 & 1938[1] Jones Ridge Road,

Axton, Virginia, ("the Real Property") as property of the estate.  The Debtors scheduled the Real

Property at a fair market value of $101,000.00.  The Debtors indicated in their schedules that the

Real Property is secured by a consensual lien in the amount of $21,848.00.  SunTrust Bank filed

a proof of claim asserting a claim secured by the Real Property in the amount of $21,689.20.

The balance due on the date of the hearing was some lesser amount.  The Debtors hold the Real

Property as tenants by the entirety.

The Debtors did not schedule any priority claims, nor were any such proofs of claim

filed.  The Debtors scheduled non-priority unsecured claims totaling $29,760.00.  One creditor

filed a  proof of claim for a joint unsecured debt in the approximate amount of $10,275.27.  The

balance of approximately $19,458.00 arose from debts owed by one or the other of the Debtors,

---

[1]     The property is recorded as two separate, but evidently contiguous, lots in the county records.
Only one lot is improved.  The unimproved lot consists of .224 acres.  The Debtors intend to sell both lots.  The
analysis is not altered by these facts.

but not both.

The Debtors' gross monthly income on Schedule A totals $2,249.00.[2]  On the date of

petition, the income consisted of $1,000.00 from Mr. Hampton's paper route, social security

payments of $871.00 to Mr. Hampton, and social security payments of $378.00 to Mrs.

Hampton.

The Debtors filed a chapter 13 plan that provided for payments of $325.00 per month for

sixty months.  The plan provided that the joint debt, set at the amount of $10,302.00 in the plan,

would be paid in full.  The plan provided that debts owed by one, but not both, of the Debtors,

$19,458.00, would be paid approximately 21% of the debt owed.  The plan met all of the

requirements of chapter 13.  On January 25, 2008, the Court confirmed the Debtors' chapter 13

plan.  The Debtors have remained current on their payments to the chapter 13 trustee under the

confirmed plan.

On January 11, 2010, the Debtors filed a motion to sell the Real Property.   The motion

indicates that a portion of the sale proceeds would be used to pay off the balance that is owed

under the Debtors' confirmed chapter 13 plan.   The chapter 13 trustee did not file a response to

the motion but appeared at the hearing and opposed the motion.  She indicated that she did not

oppose the sale if the proceeds were used to pay all unsecured claims in full.    At the hearing she

further proffered an oral motion to modify the Debtors' plan to provide for the payment of all

unsecured claims in full.  The Debtors oppose the motion to modify the plan.  The Court took the

motion to sell and the oral motion to modify the plan under consideration.

After the hearing, the parties lodged an agreed order permitting the Debtors to sell the

---

[2]        This does not including a $154.00 payment from their son which they use to pay for the son's
motorcycle the debt on which is in their name.

3

Real Property and place the funds in dispute in escrow pending the resolution of the chapter 13

trustee's motion to modify the plan.

### *Discussion*

A motion to modify a chapter 13 plan may be brought under Section 1329(a)&(b)[3].  The

relevant portion of Section 1329(a) provides that, upon a motion by the debtor,  the trustee, or an

unsecured creditor, a confirmed plan may be modified to increase or reduce the amount of

payments on claims of a particular class provided for by the plan.  Section 1329(b) specifies that

the modified plan must comport with Sections 1322(a), 1322(b), and 1323(c) of the Bankruptcy

Code and must meet the requirements of section 1325(a) of the Bankruptcy Code.

The Fourth Circuit has provided a guideline for trial courts to follow in considering a

---

[3]        Section 1129(a)& (b) provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the
plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim,
to --
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments;
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent
necessary to take account of any payment of such claim other than under the plan; or
(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase
health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise
have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that--
        (A) such expenses are reasonable and necessary;
        (B)(I) if the debtor previously paid for health insurance, the amount is not materially larger than
        the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or
        (ii) if the debtor did not have health insurance, the amount is not materially larger than the
        reasonable cost that would be incurred by a debtor who purchases health insurance, who has
        similar income, expenses, age, and health status, and who lives in the same geographical location
        with the same number of dependents who do not otherwise have health insurance coverage; and
        (C) the amount is not otherwise allowed for purposes of determining disposable income under
        section 1325(b) of this title; and upon request of any party in interest, files proof that a health
        insurance policy was purchased.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this
title apply to any modification under subsection (a) of this section.
(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is
disapproved.

motion to modify a chapter 13 plan under Section 1329.

> [W]hen a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. . . . [I]f the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

In re Murphy, 474 F.3d 143, 150 (4th Cir. 2007). Also see In re Arnold, 869 F.2d 240, 241 (4th Cir. 1989). The Fourth Circuit instructions, then, direct the trial court to (a) determine whether the debtor has experienced a significant and unanticipated change in his or her financial condition; (b) determine whether the requirements of Section 1329(a) are met; and (c) determine whether the requirements of Section 1329(b) are met.

    *A. Whether the Debtors experienced a Significant and Unanticipated Change.*

    A confirmed chapter 13 plan is a contract to which the doctrine of res judicata applies. See Murphy, 473 F.3d at 148. It is however subject to modification by statute under certain circumstances. Id. When considering a motion to modify a confirmed chapter 13 plan, the trial court "must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan." Id. at 150.

    A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed. Id. at 149. For purposes of this analysis, the court concludes, without deciding, that any change in the Debtors' financial

situation was unanticipated.

We next consider whether the change was significant.  In the case at bar, the Debtors scheduled the value of the Real Property at $101,000.00.  The Debtors intend to sell the Real Property for a gross sales price of $128,000.00.  If these amounts are considered without adjustment for seller-paid closing costs, the Debtors may be said to have realized an increase in their net worth of $27,000.00.   This represents a 26.7% increase in the value of the Real Property over a period of 26 months, or approximately 12% per annum.

The seller, however,  has agreed to pay the following at closing: (1) Real estate commissions of $7,530.00; (2) termite inspection of $50.00; (3) deed preparation of $150.00; (4) grantor's tax of $130.00; (5) closing costs of $5,500.00; (6) repairs of $1,000.00; (7) well and sceptic expenses of $275.00; and (8) water testing of $125.00.  These costs that are to be paid by the seller at closing total $14,760.00.   The net sales price, after payment of these expenses by the seller will be $113,200.00.   If the closing costs are included in the calculation, the Debtors may be said to have realized an increase in their net worth of $12,200.00. This represents 12% over a period of 26 months, or approximately 5.5% per annum.

The change in financial condition of the debtors in Murphy and the change in  Arnold both exceed 5.5%, and even 12%, by a multiple of four or more.   In Murphy, the Debtor scheduled his residence at $155,000.00.  He sold it for $235,000.00, an increase of  51.6%, eleven months later.  The increase in value represented a gain of 56.2% per annum.  In Arnold, the debtor experienced an increase in income from $80,000.00 per year to $200,000.00 per year, an increase of $120,000.00, or 150%.  In each case, the Fourth Circuit affirmed that the change in the debtor's financial situation was both unanticipated and significant.

6

It is concluded that the change in the value of the Debtors' residence is not significant as that term is defined in <u>Murphy</u>. And, as discussed below, if it were significant , it is not the kind of change that warrants a modification to the Debtors' plan.

*B. Section 1329(a)*

Section 1329(a) provides, among other things, that a plan may be modified to increase the payments to a particular class provided by the plan. In this case, the chapter 13 trustee seeks to increase the total amount paid to the Class B unsecured creditors.   The requirement of Section 1329(a) is met in this case.

*C. Section 1329(b)*

Section 1329(b) provides that the modified plan must comport with Sections 1322(a), 1322(b), and 1323(c) of the Bankruptcy Code and must meet the requirements of section 1325(a) of the Bankruptcy Code.

Section 1323(c) provides "that [a]ny holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection." It is not applicable to the case at bar.

Portions of the other sections cited in Section 1329(b), when read together, provide that a chapter 13 plan cannot be confirmed unless it commits the debtor to pay the trustee the greatest of three amounts, the calculation of which is provided for by those sections. Section 1322(a)(4) provides that all priority claims must be paid in full during the pendency of the plan. This may be referred to as the "Priority Claims Test". Section 1325(a)(4) provides that a debtor must pay

a sufficient amount into the chapter 13 plan each month so that the total amount paid into the

plan is such that unsecured creditors receive at least as much as they would in chapter 7.   This is

often referred to as the "Chapter 7 Test".   Finally, Section 1325(a)(1) provides that the plan

must comply with all of the provisions of chapter 13, including Section 1325(b) which requires

that a debtor pay all of his or her available disposable income into the plan each month.  This

often referred to as the "Disposable Income Test."  Each of these three amounts is calculated at

the beginning of the case and the chapter 13 debtor is required to pay the greatest of them into

the plan.

To summarize, if there is a significant and unanticipated change in a debtor's financial

situation, Section 1329 provides that a motion by a creditor or the chapter 13 trustee to modify a

chapter 13 plan will be granted if a recalculation of one of these three amounts exceeds the

amount that the debtor is currently paying to the trustee pursuant to the confirmed plan.  While

the Fourth Circuit in Murphy and Arnold did not discuss this analysis, it is clear that it was

necessarily assumed and followed in both opinions.[4]

In Arnold, the debtor realized a significant increase in his annual income.   If the debtor

had earned $200,000.00 instead of $80,000.00 when he filed his bankruptcy petition, his original

plan could not have been confirmed unless it provided that he pay his creditors in full .  Because

he realized the increase in income after he filed his petition, he was required to increase his

payments by an order rendered pursuant to the Disposable Income Test in Section 1325(b) as

made applicable post-confirmation by Section 1329(b).  While the Fourth Circuit focused its

---

[4]       The issue, and the purpose of the opinions, in Arnold and Murphy was to introduce and define the
requirement that a change be significant and unanticipated.  It was not to review the statutory requirements of
Section 1329.

discussion on the change in the debtor's income as it affected his financial situation, Section

1329(b) necessarily required that the effect of that increased income was to increase the amount

of the debtor's  monthly disposable income.

In Murphy, the debtor realized a significant post-petition increase in the value of his real

property.  If the debtor's residence had been valued at $235,000.00 instead of $155,000.00  when

he filed his bankruptcy petition, his original plan could not have been confirmed unless it

provided that he pay his creditors an additional amount based upon the increase in the value of

the non-exempt asset.  Because he realized the increase in income after he filed his petition, he

was required to increase his payments by an order rendered pursuant to the Chapter 7 Test in

Section 1325(a)(4) as made applicable post-confirmation by Section 1329(b).  Again, although

the Fourth Circuit focused its discussion on the change in the value of the debtor's residence as it

affect his financial situation, Section 1329(b) necessarily required that the effect of that increase

in the value of his residence was to increase the amount that the debtor was required to pay based

on the Chapter 7 test.

It is appropriate to apply the Priority Claims Test, the Disposable Income Test, and the

Chapter 7 Test to the facts in the case at bar to determine whether the requirements of Section

1329(b) inform the Court to grant the motion of the chapter 13 trustee to modify the plan to

require the Debtors to pay 100% of all unsecured claims.

It must be noted, however, that the consideration of each of these tests made pursuant to a

motion by the trustee or a creditor is different in an important way from a proposed plan by a

debtor.   Each test sets forth a minimum amount that a debtor must pay.   But when a motion is

brought by the trustee or a creditor under Section 1329, each minimum becomes a maximum

limiting the payment amount that the movant can foist upon the debtor.  For example, if the

application of each of the three tests examined pursuant to a motion under Section 1329 required

a debtor to pay $500.00 per month, a plan that proposed a payment of $5,000.00 per month

would meet each of the requirements, but would not be confirmable.  While there is no provision

in the Bankruptcy Code that expressly places such a limit on a plan proposed by the trustee or a

creditor, Section 1325(a)(3) does require that any such plan be filed in good faith, whether filed

by the debtor originally or by a creditor or trustee subsequently.  Clearly, a plan filed by a trustee

or creditor is filed in bad faith if it requires a debtor to pay more than he or she would be

required to pay under an original  confirmable chapter 13 plan.

Next we consider the three tests.  No priority claims have been filed at any time in this

case.  The Priority Claims Test does not counsel granting the motion.

And neither does the Disposable Income Test.  The Debtors have realized an anticipated

and insignificant increase income in the form of a statutory increase in their social security

benefits.  The amounts are small and are not the basis of the chapter 13 trustee's motion.

Further, the Debtors are 74 and 70 years old.  Mr. Hampton testified that he has "been having a

back problem for about ten or fifteen years now.   Had to have an operation [and] was out of

work every year."[5]  He further testified that the pain is now  tolerable only with medication.  He

has fallen a number of times because of numbness in his leg.  He further testified that the reason

that the Debtors decided to sell the Real Property was to generate sufficient funds to permit them

to pay off the chapter 13 plan which would allow Mr. Hampton to discontinue the paper route.

Revisiting the Disposable Income Test does not counsel granting the motion to modify the

---

[5]        Transcript of Hearing, p. 15, l. 14-16.

Debtors' plan.

Finally, we turn to the Chapter 7 Test and begin by examining how the Debtors calculated the minimum under this test when they filed their original plan.  The Debtors scheduled personal property as property of the estate in the amount of $16,032.00, all of which was claimed exempt.  The Debtors' personal property had no effect on the Chapter 7 Test as applied to the Debtors' original plan.  Nothing has changed in this regard since that time.

The Debtors also scheduled real assets totaling $114,000.00.  One of the properties secures a claim in the amount of $21,848.00.  All of the properties are held as tenants by the entirety.  As noted, the Debtors' unsecured claims total $29,760.00. The claim that is  against both Debtors amounts to $10,275.27.  The balance of approximately $19,458.00 consists of claims that are against one or the other of the Debtors, but not both.

It is first necessary to determine how the fact that the Debtors hold the real properties as tenants by the entirety effects their ability to exempt those properties.  Any interest in property of a debtor held as a tenant by the entirety is exempt to the extent that it is exempt from process under applicable nonbankruptcy law.  11 U.S.C. § 522(b)(3)(B).   In Virginia, the interest of one spouse in entireties property is not subject to execution by the creditors of that spouse only.  See In re Bass, 5 B.R. 592 (Bankr. W.D. Va. 1980).  Creditors holding a claim against only one of two debtors who hold a property as tenants by the entirety may not reach that property under Virginia law.

A creditor having a claim jointly against both spouses, however, may reach property that is held by the debtors as tenants by the entirety.

> . . . It is fundamental that a creditor holding a judgment against two or more persons
> jointly and severally may execute against real property owned by those same persons

11

jointly, or held by them as tenants by the entirety. <u>Vasilion v. Vasilion</u>, 192 Va. 735, 66 S.E.2d 599 (1951); <u>Martin v. Lewis</u>, 187 N.C. 473, 122 S.E. 180 (1924), 35 A.L.R. 144; In Re Ford, 3 B.R. 559 (Md.1980).

<u>Ragsdale v. Genesco, Inc. (In re Ragsdale)</u>, 674 F.2d 277, 279 (1982).

In the case at bar, this means that the joint creditor may reach the Real Property to the full extent of its claim, or $10,274.27.   This is why the Debtors' plan provided for payment in full of this claim.  The other creditors, who hold claims against only one of the Debtors, however, could not reach the Real Property outside of bankruptcy and so the Debtors may exempt the Real Property to the full extent of its value with respect to those creditors.   The observed increase in value of the Real Property has not changed these facts.

The only way that an increase in the value of an asset held by a debtor during the pendency of a chapter 13 plan can affect how much that debtor must pay during the life of the plan is through the Chapter 7 Test.  If the value of a debtor's non-exempt assets does not increase, then the amount that the debtor must pay unsecured creditors cannot be increased under Section 1329 by virtue of the Chapter 7 Test.

This is the important point.  *Nothing has changed in the Debtors' financial situation since they filed their bankruptcy petition that would increase the amount of non-exempt property available to unsecured claimants if this were a chapter 7 case.*  Consequently, the Debtors could not have been forced to make a larger monthly payment originally if they had scheduled the Real Property at $128,000.00, or $200,000.00 or even $500.000.00.  It follows that they cannot now be forced to increase the amount that they must pay to the chapter 13 trustee.

This holding is consistent with the decision of the Court in <u>Murphy</u>.  It is clear in <u>Murphy</u> that the debtor had not claimed the condominium exempt and that the realized increase in the

value of that asset required a greater payment into the chapter 13 plan in order to conform with

the Chapter 7 Test.  If the debtor had claimed the condominium exempt, his creditors could not

have benefitted by its increase in value in chapter 13, because they could not have benefitted

from it in chapter 7.

### *Conclusion*

The increase in the value of the Debtors' Real Property does not form a basis for

modifying their confirmed chapter 13 plan because it has no effect upon the Debtors' financial

situation that is relevant to the administration of their chapter 13 case.

### **ORDER**

The chapter 13 trustee's motion to modify the Debtors' chapter 13 plan is denied.  The

Debtors are entitled to all net proceeds from the sale of their residence except the amount

necessary to pay their current confirmed plan in full.

So ORDERED.

Upon entry of this Memorandum and Order the Clerk shall forward a copy to H. David

Cox, Esq., counsel for the debtor, and the chapter 13 trustee.

Entered on this 23rd day of March, 2010.

William E. Anderson
United States Bankruptcy Judge