**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re ARLEN C. HAMPTON and | ) | Case No. 07-62119-LYN |
| PATRICIA M. HAMPTON, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**
**<u>ON MOTION TO ALTER OR AMEND JUDGMENT</u>**

      This matter comes before the court on a motion to alter or amend an order denying the

chapter 13 trustee's motion to modify the confirmed chapter 13 plan of Arlen C. Hampton and

Patricia M. Hampton ("the Debtors").   The trustee's motion to modify the Debtors's chapter 13

plan was first raised orally at a hearing on the Debtors' motion to sell their residence and use a

portion of the proceeds to pay the balance owed under their chapter 13 plan.[1]  The chapter 13

trustee did not object to the motion to sell the residence, but argued that if the motion was

granted, the Debtors should be required to pay their unsecured claims in full from the proceeds

of the sale.  The court denied the trustee's motion to modify the Debtors' plan to provide for the

---

[1]      The trustee subsequently filed a written motion to modify the plan with the Clerk of the
Bankruptcy Court.

1

payment of all unsecured claims in full.

### *Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A).   This Court may enter a final order.  This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *Facts*

On November 8, 2007, the Debtors filed the above-styled chapter 13 petition.  They scheduled real property, their residence, commonly known as 1926 & 1938[2] Jones Ridge Road, Axton, Virginia, ("the Real Property") as property of the estate on Schedule A.  The Debtors scheduled the Real Property at a fair market value of $101,000.00.  The Debtors indicated in their schedules that the Real Property is secured by a consensual lien in the amount of $21,848.00.  SunTrust Bank filed a proof of claim asserting a claim secured by the Real Property in the amount of $21,689.20.  The balance due on the date of the hearing was some lesser amount.  The Debtors hold the Real Property as tenants by the entirety.

The Debtors did not schedule any priority claims, nor were any such proofs of claim filed by other parties.  The Debtors scheduled non-priority unsecured claims totaling $29,760.00.  One creditor filed a  proof of claim for a joint unsecured debt in the approximate amount of $10,275.27.  The balance of approximately $19,458.00 arose from debts owed by one or the

---

[2]        The property is recorded as two separate, but evidently contiguous, lots in the county records.  Only one lot is improved.  The unimproved lot consists of .224 acres.  The Debtors intend to sell both lots.  The analysis is not altered by these facts.

other of the Debtors, but not both.

The Debtors' gross monthly income on Schedule A totals $2,249.00.  On the date of

petition, the income consisted of $1,000.00 from Mr. Hampton's paper route, social security

payments of $871.00 to Mr. Hampton, and social security payments of $378.00 to Mrs.

Hampton.

The Debtors filed a chapter 13 plan that provided for payments of $325.00 per month for

sixty months.  The plan provided that the joint debt, set at the amount of $10,302.00 in the plan,

would be paid in full.  The plan provided that debts owed by one, but not both, of the Debtors,

$19,458.00, would be paid approximately 21% of the debt owed.  The plan met all of the

requirements of chapter 13.  On January 25, 2008, the Court confirmed the Debtors' chapter 13

plan.  The Debtors have remained current on their payments to the chapter 13 trustee under the

confirmed plan.

On January 11, 2010, the Debtors filed a motion to sell the Real Property.   The motion

indicates that a portion of the sale proceeds would be used to pay off the balance that is owed

under the Debtors' confirmed chapter 13 plan.   The chapter 13 trustee did not file a response to

the motion but appeared at the hearing and opposed the motion.  She indicated that she did not

oppose the sale if the proceeds were used to pay all unsecured claims in full.  At the hearing she

further proffered an oral motion to modify the Debtors' plan to provide for the payment of all

unsecured claims in full.  The Debtors opposed the motion to modify the plan.  The Court took

the motion to sell and the oral motion to modify the plan under submission.

After the hearing, the chapter 13 trustee filed a written motion to modify the Debtors'

plan and the parties lodged an agreed order permitting the Debtors to sell the Real Property and

3

place the funds in dispute in escrow pending the resolution of the chapter 13 trustee's motion to modify the plan.

An order issued from this Court denying the Chapter 13 trustee's motion to modify the Debtors' plan.  The order was supported by a memorandum ("the Memorandum").  The trustee timely filed a motion to alter or amend the order.

### *Discussion*

The chapter 13 trustee brings the motion to alter or amend the judgment under Fed.R.Civ.P. 59 which is made applicable in this matter by Fed.R.Bankr.P.  9023 which provides that after a nonjury trial a court may grant a new hearing on all or some of the issues for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.  In this instance, the trustee asks the court to reconsider its reasoning concerning the method that is to be used to determine the amount that a debtor must pay unsecured creditors pursuant to a modified chapter 13 plan.

### I.

A motion to modify a chapter 13 plan may be brought under Section 1329(a)&(b)[3].  The

---

[3]        Section 1329(a)& (b) provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to --
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments;
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that--
        (A) such expenses are reasonable and necessary;
        (B)(I) if the debtor previously paid for health insurance, the amount is not materially larger than the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or
        (ii) if the debtor did not have health insurance, the amount is not materially larger than the

relevant portion of Section 1329(a) provides that, upon a motion by the debtor, the trustee, or an

unsecured creditor, a confirmed plan may be modified to increase or reduce the amount of

payments on claims of a particular class provided for by the plan. Section 1329(b) specifies that

the modified plan must comport with Sections 1322(a), 1322(b), and 1323(c) of the Bankruptcy

Code and must meet the requirements of section 1325(a) of the Bankruptcy Code.

The Fourth Circuit Court of Appeals has added a threshold test ("the Threshold Test") to

Section 1329 and has provided a guideline for trial courts to follow in applying the Threshold

Test to a motion to modify a chapter 13 plan under Section 1329. See In re Murphy, 474 F.3d

143, 150 (4th Cir. 2007) (Before considering a motion to modify a chapter 13 plan under Section

1329, a bankruptcy court must first determine if the debtor experienced a substantial and

unanticipated change in his post-confirmation financial condition.). In promulgating the

guideline, the Fourth Circuit reaffirmed the threshold test set forth in In re Arnold, 869 F.2d 240

(4th Cir. 1989) that required that a debtor's chapter 13 plan may only be modified under Section

1329 if the debtor has experienced a substantial and unanticipated change in his or her financial

condition. Murphy also expanded the Threshold Test to include consideration of sales of

revested property of the debtor (and presumably sales of property of the estate).

The chapter 13 trustee raises a number of points in support of the argument that Murphy

---

reasonable cost that would be incurred by a debtor who purchases health insurance, who has
similar income, expenses, age, and health status, and who lives in the same geographical location
with the same number of dependents who do not otherwise have health insurance coverage; and
(C) the amount is not otherwise allowed for purposes of determining disposable income under
section 1325(b) of this title; and upon request of any party in interest, files proof that a health
insurance policy was purchased.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this
title apply to any modification under subsection (a) of this section.
(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is
disapproved.

stands for the proposition that a modified plan may require a debtor to pay an amount that is greater than that required by the analysis in the Memorandum.  In order to address the concerns of the chapter 13 trustee, it is necessary to outline the <u>Murphy</u> opinion in some detail.

<u>Murphy</u> may be divided into three parts: (1) the preambulatory language which recites the procedural posture of the two appeals that are considered by the Court; (2) Part I which recites the facts of each case on appeal; and (3) Part II which discusses the relevant law and applies that law to the facts in each of the two cases and, additionally, concludes that property revested in a debtor by a confirmed plan may be considered when applying the Threshold Test and the Chapter 7 Test through Section 1329(b).  Each of three parts of <u>Murphy</u> is discussed in turn below.

A. <u>Murphy</u>:  The Preambulatory Language

The pre-ambulatory language in <u>Murphy</u> briefly reviews the procedural posture of the two appeals.  The first appeal is that of chapter 13 trustee in the case of Stanley and Doris Goralski.   The second appeal is that of the debtor in the case of James Own Murphy, Jr.  Part I contains two subpart.  The procedural posture and facts of the two cases are summarized in the following paragraphs herein.

B. <u>Murphy</u>: Part I

Part I.A. recites the facts in the <u>Goralski</u> case.  In that case, the bankruptcy court confirmed a chapter 13 plan that paid unsecured creditors a dividend of less that 100% of their claims.  The debtors borrowed money giving their residence as collateral in an amount greater than that necessary to pay off their chapter 13 plan.  They offered to pay the balance of the debt owed under their chapter 13 plan.  The chapter 13 trustee sought an order modifying the debtors'

plan to require them to pay an amount greater than under the original plan.  The bankruptcy court

denied the trustee's motion and the United States District Court affirmed.  The trustee appealed

the decision of the District Court to the Fourth Circuit.

Part I.B. recites the facts in the Murphy case.  In that case, the bankruptcy court also

confirmed a chapter 13 plan that paid unsecured creditors a dividend of less that 100% of their

claims.  Thereafter, the debtor sold his residence, which had appreciated post-petition from

$155,000.00 to $235,000.00 (51.6%) in eleven months.   He tendered funds to the chapter 13

trustee sufficient to pay off his chapter 13 plan.  The trustee sought an order modifying the

chapter 13 plan to provide for the payment of all unsecured claims in full.  The Bankruptcy

Court granted the trustee's motion and the United States District Court affirmed.  The debtor

appealed the decision of the District Court to the Fourth Circuit Court of Appeals.

C.  Murphy: Part II

Part II of the Murphy opinion contains four subparts: (1) the preamble which presents

statements of law; (2) Part II.A. which applies the statements of law in the preamble to the facts

in the Goralski case; (3) Part II.B. which applies the statements of law in the preamble to the

facts in the Murphy case; and (4) Part II.C. which addresses the legal implication of the fact that

the plans in Goralski and Murphy provided that property of the estate revested in the debtor(s).

The preamble to Part II of the Murphy opinion contains eight paragraphs.  The first

paragraph discusses chapter 13 generally, including the fact that a plan cannot be confirmed

unless it is proposed in good faith and provides that the unsecured creditors will receive as much

in chapter 13 as they would in chapter 7 (the Chapter 7 Test).  The second paragraph discusses

the difference between "pot plans" and "percentage plans".[4]  The third paragraph affirms that a chapter 13 plan is binding contract that is subject to modification.  The fourth paragraph notes that Section 1329(a) requires, among other things, that the plan "increase or reduce the amount of payment on claims . . . or extend or reduce the time for such payments."[5]   It also notes that Section 1329(b) provides that the modified plan must comply with sections 1323(c) and 1325(a)&(b).

In paragraph 5, the Court sets out the policy reasons underlying its holding in In re Arnold that the doctrine of *res judicata* prevents modification of a confirmed plan under Section 1329 unless the party seeking modification demonstrates that the debtor experienced a "substantial' and "unanticipated" post-confirmation change in his or her financial condition.  In paragraph 6, the Court separately briefly discusses the "substantial" component and the "unanticipated" component of the threshold test separately.   In paragraph 7, the Fourth Circuit Court of Appeals notes that in Arnold, it rejected the debtor's argument that he did not have the ability to make the payment.

In paragraphs 8 of the preamble to Part II, the Fourth Circuit Court of Appeals sets forth a three-step approach that bankruptcy courts in the Fourth Circuit are to use when considering a motion for modification under Section 1329.

>. . . [In accordance with Arnold], the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan.   . . .

---

[4]        A "pot plan" provides that creditors will receive a total distribution equal to or greater than an amount certain.   A "percentage plan" provides that each creditor will receive a certain percentage of its claim.

[5]        Plan modification is allowed in two additional instances, neither of which is relevant to this discussion.  See Murphy, 474 F.2d at 149, n. 7.

> [I]f the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). . . .  If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with 1329(b)(1).

Murphy, 474 F.3d at 150.

In Part II.A. the Court, applying the threshold test from Arnold to the facts in the Goralski case, concluded generally that the refinancing of a mortgage cannot provide a basis for modification of a confirmed plan because it does not alter the financial condition of the debtor.

In Part II.B., the Court applied the three steps summarized in paragraph 8 of the preambulatory language to the facts in the Murphy case.  In the first paragraph, the Court concluded that the change experienced by Murphy was substantial.  In the second paragraph, the Court concluded that the change was unanticipated.  In the first part of the third paragraph, the Court concluded that the trustee's proposed  modification met requirements of Section 1329(a).

In the second part of the third paragraph of Part II.B., the Court began the analysis under Section 1329(b).  In paragraphs 4 and 5 of Part II.B., the Court discusses five of the requirements of chapter 13 that are imposed under Section 1329(b), including the requirement that the debtor fund the chapter 13 plan, the treatment of secured creditors, feasibility, the chapter 7 test, and whether the plan is proposed in good faith.  First, the Court considered Section 1322(a)(1) which provides that a plan must provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.  This section simply provides that a chapter 13 plan must require the debtor to pay all funds to the trustee necessary for the distribution of payments under the plan.  Section 1322(a)(1) does not provide a manner by which the amount of the chapter 13 payments

9

are to be calculated.

The next part of the fourth paragraph concerns the treatment of secured claims.  This discussion in <u>Murphy</u> does not provide a manner by which payments to unsecured creditors are to be calculated.  It is not implicated by the chapter 13 trustee's motion in <u>Murphy</u> and is not relevant to the case at bar.

In the first part of the fifth paragraph of Part II.B., the Court concluded that the chapter 13 trustee's proposed plan in <u>Murphy</u> was feasible under Section 1325(a)(6).  The Court next affirmed the bankruptcy court's conclusion that the proposed modification met the Chapter 7 Test.  Finally, the Fourth Circuit concluded that the chapter 13 trustee proposed the modified plan in good faith.

In Part II.C., the Fourth Circuit Court of Appeals held that the threshold test and the requirements of Section 1329 may be applied to a motion to modify a confirmed chapter 13 plan, even if the change in the debtor's financial condition concerns property that has revested in the debtor pursuant to that confirmed chapter 13 plan, as was the case in both <u>Goralski</u> and <u>Murphy</u>.

In summary, other than the recitation of the facts, there are three distinct discussions in <u>Murphy</u>: (1) that concerning the Threshold Test; (2) that concerning Section 1329(b) including the calculation of the amount to be paid to unsecured creditors; and (3) that concerning the effect of revestiture of property of the estate in the debtor.

II.

The trustee makes five arguments that are considered in turn below.

A.

The trustee first argues that the statement in the Memorandum that a confirmed plan must

10

pay the greatest of three amounts is incorrect.  The Memorandum observed that three sections

cited in Section 1329(b), when read together, provide that a chapter 13 plan cannot be confirmed

unless it commits the debtor to pay an amount that meets each of the three tests.  The three

sections cited in the Memorandum are (1) Section 1322(a)(4) which provides that all priority

claims must be paid in full during the pendency of the plan ("the Priority Claims Test")[6]; (2)

Section 1325(a)(4) which provides that a debtor must pay a sufficient amount into the chapter 13

plan each month so that the total amount paid into the plan allows unsecured creditors to receive

at least as much as they would in chapter 7 ("the Chapter 7 Test")[7]; and (3) Section 1325(a)(1)

which provides that the plan must comply with all of the provisions of chapter 13, including

Section 1325(b) which requires that a debtor pay all of his or her available disposable income

into the plan each month ("the Disposable Income Test").

The only other section that can possibly compel a debtor to pay more to unsecured

creditors than the three sections is Section 1325(a)(4) which requires a proponent to propose a

chapter 13 plan in good faith.  Good faith may require a greater amount if the three calculations

result in a de minimus payment amount.   See (Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982)

(Adopting a totality of the circumstances test for good faith where debtor proposes no or only

minimal payment of unsecured claims.).   As a general rule, this court requires debtors to pay

unsecured creditors 20% of their claims.[8]  The Debtors' good faith, however, was not an issue in

---

[6]        Under the Priority Claims Test, a debtor must also pay administrative claims (generally limited to attorney fees and trustee fees) in addition to the priority claims.

[7]        Under the Chapter 7 Test, a debtor must also pay administrative claims (generally limited to attorney fees and trustee fees) in addition to the priority claims.

[8]        The Debtors' plan provided for the payment of 21% of the Debtors' non-priority debt owed by one of the Debtors and 100% of the debt owed by both of the Debtors.  On average, the Debtors paid approximately 45% of their general unsecured debt.

11

this matter and so it was not discussed in the Memorandum.

Good faith and the three tests discussed above are the only sections that determine the minimum amount that must be paid to unsecured creditors through a chapter 13 plan.  The Bankruptcy Court stated such in the Murphy case.  See In re Murphy 327 B.R. 760, 765 (Bankr. E.D.Va. 2005) ("Although secured and priority claims must be paid in full, unsecured debts may be paid in a compromise amount so long as the plan is proposed in good faith, the present value of what creditors receive is at least as much as they would receive in a chapter 7 liquidation, and the debtor pays into the plan his or her disposable income for [the requisite time period]."

In support of the argument, the chapter 13 trustee states "confirmation of the plan is contingent upon the plan's compliance with all subsections of 1322 and *all* subsection of 1325(a) and such compliance may require calculations greater than only three amounts, depending on specific facts in a particular case.  Confirmation will require consideration of all the criteria of section 1322, not merely the requirement to pay priority claims, and all the requirements of section 1325(a), not solely the 'chapter 7 test'."  In fact, Section 1329(b) impresses all of chapter 13 (as well as all other applicable bankruptcy provisions) upon the consideration whether a chapter 13 plan should be modified.   Section 1329(b)(1) provides that the requirements of Section 1325(a) apply to any modification under Section 1329(a).  Section 1325(a)(1) provides that a plan may only be confirmed if "the plan complies with the provisions of this chapter and with the other applicable provisions of [the Bankruptcy Code]."

The trustee's statement, however, does not contradict the Memorandum.  The Memorandum does not state that confirmation does not require consideration of any other sections.  Rather, the Memorandum states that the determination of the amount that must be paid

12

to unsecured creditors is to be considered under the three tests.  Just because the Memorandum

discusses, at one point, three requirements for confirmation, does not mean that it asserts that

there are no other requirements for confirmation.

## B.

The trustee also asserts that the "Memorandum incorrectly states that the Fourth Circuit

ruled in Murphy that the debtor was required to amend his plan because the 'Chapter 7 test'

required an increase in amounts required to pay creditors."  The Memorandum states that

"although the Fourth Circuit focused its discussion on the change in the value of the debtor's

residence . . . ,Section 1329(b)  [by incorporating Section 1325(a)(4)] necessarily required that

the effect of that increase in the value of his residence was to increase the amount that the debtor

was required to pay based on the Chapter 7 test."  The statement is true.  While the Fourth

Circuit Court of Appeals did not explicitly state that the chapter 7 test was the reason for

affirming the Bankruptcy Court's confirmation of the modified plan, it did note that the 100%

payment required by the modified plan met the best interest of creditors under the circumstances

of the case.  The trustee has not cited any language in either Murphy or the Bankruptcy Code

that would lead to a contrary conclusion.

The trustee quotes the following language from Murphy (at page 152) in support of the

argument:

> . . . Unlike the . . . refinancing, Murphy, by selling his condominium, received a
> substantial amount of readily available cash without any debt. Thus, his financial
> condition substantially changed with the receipt of this income . . . .

The quote is taken from the first part of Part II.B. in Murphy which discusses whether the

debtor's change in financial condition met the Threshold Test established in Arnold.  More

13

specifically, the Fourth Circuit Court of Appeals was comparing the difference in the change in

financial condition of the debtor in Goralski with that of the debtor in Murphy. This is made

clear by examining the omitted language in the quote. In full, the Court wrote:

> . . . Unlike the Goralskis' refinancing, Murphy, by selling his condominium, received a
> substantial amount of readily available cash without any debt. Thus, his financial
> condition substantially changed with the receipt of this income, while the Goralskis'
> condition did not improve in light of the new debt they assumed.

It is clear from the full quote that the Fourth Circuit Court of Appeals is analyzing the change in

Murphy's financial condition under the Threshold Test, not the amount that he was required to

pay his unsecured creditors under Section 1329(b).

The trustee provides two other quotes from Murphy in support of the proposition that

Murphy provides an additional test for calculating the amount to be paid to unsecured creditors.

After noting that the debtor in Arnold was not permitted to use his confirmed plan as a shield

against his creditors when he experienced a substantial and unanticipated increase in his income,

the Fourth Circuit Court of Appeals wrote "we see no reason why substantial, unanticipated

income realized from the sale of property would not also warrant a modification of a confirmed

plan" and "even though property vested in Murphy upon confirmation, this fact did not prevent

the Chapter 13 trustee from seeking to modify Murphy's plan." Murphy, 474 F.3d at 154. The

quotes constitute extracts from the final two sentences in Part II.C. which concerns the issue of

whether the court may consider property that has revested in the debtor when determining

whether a party may *seek* to modify a plan and in determining the effect of a change in the value

of property under the Chapter 7 Test. More specifically, the Court was discussing whether a sale

of revested property could constitute a change in financial condition sufficient to meet the

Threshold Test in Murphy, as the debtor's change in income had in Arnold. The Court

14

concluded that revestiture was not an impediment to considering the sale of property when determining whether the facts of the case warranted permitting the motion to go forward under the Threshold Test.  The Fourth Circuit Court of Appeals did not, by these statements, provide an alternative method for calculating the amount that a debtor must pay unsecured creditors in a modified chapter 13 plan.

C.

The trustee also disagrees with the statement in the Memorandum that a plan proposed by a trustee in a motion to modify a debtor's plan is filed in bad faith if it seeks to require the debtor to pay more than the greatest amount calculated under the three tests using the debtor's changed financial condition.  The trustee argues that "if the proposed modification to the plan is feasible, that is, if the debtor can pay the proposed modified plan and meet his necessary living expense, the proposed modification is in good faith." This Court can find no such holding in Murphy.

The trustee bases the assertion on the fact that Murphy provides that "the Chapter 13 trustee's proposal to modify the plan to pay the unsecured creditors at a rate of 100 percent is feasible insofar as Murphy unquestionably has the ability to pay the unsecured creditors at a rate of 100 percent."  Murphy, 474 F.3d at 153.  In Part II.B. the Fourth Circuit Court of Appeals discussed feasibility and good faith separately.  The quoted sentence occurs in the discussion of feasibility and has no relation to good faith.

The trustee also bases the assertion on the fact that Murphy provides that "[i]n exercising his fiduciary duty, the Chapter 13 trustee proposed the modification in good faith to prevent Murphy from receiving such a substantial windfall." Murphy, 474 F.3d at 153.  This statement is discussed in the portion of Part II. B. that discusses good faith.   The statement makes no

15

reference to feasibility.   Murphy does not stand for the proposition that a modified plan is filed in good faith if it is feasible.

### D.

The trustee also disagrees with the statement in the Memorandum that "[t]he only way that an increase in the value of an asset held by a debtor during the pendency of a chapter 13 plan can affect how much that debtor must pay during the life of the plan is through the Chapter 7 Test."   The trustee first states that the statement is "contrary to the holding in Murphy affirming Judge Mitchell's opinion in which he explained how it is the sale of property resulting in *proceeds* constituting income that improves a debtor's financial condition, not solely the 'Chapter 7 test.'"

The trustee's statement confuses the application of chapter 13 plan requirements through Section 1329(b), which is used to determine the amount that a debtor is required to pay under a modified chapter 13 plan, with the Threshold Test concerning a change in a debtor's financial condition which is used to determine whether a confirmed chapter 13 plan is subject to modification, the doctrine of *res judicata* notwithstanding.   The statement in the Memorandum concerns the former; the trustee's statement concerns the latter.   They are two entirely separate issues and statements concerning the one are not properly applied to the other.

The trustee also asserts that the Chapter 7 Test cannot be applicable because the property at issue in Murphy was not property of the estate.   In Murphy, the trustee specifically argued that the debtor should be required to pay 100% of his unsecured claims *because the Chapter 7 Test required it.*

The trustee's position, succinctly stated, is that both the motion to sell and the motion to borrow were, in substance if not in name, motions to modify the confirmed

16

plans. Modification of a confirmed plan in turn requires that the plan, as modified, satisfy the confirmation requirements of § 1325(a). § 1329(b)(1), Bankruptcy Code.  These include not only the general requirement of good faith under § 1325(a)(3), but also the requirement that

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4). Thus, the trustee argues, any appreciation in the value of the real property must be made available to unsecured creditors to the extent necessary to insure that they receive what they would receive if the debtor's estate were liquidated under chapter 7 on the date of the plan modification.

Murphy, 327 B.R. at page 765-766.  This constituted the end of the Court's discussion on the subject.  It can only be interpreted to mean that the Bankruptcy Court accepted the argument of the Chapter 13 trustee that the debtor in Murphy was required to pay more because the Chapter 7 Test required it, the fact that the property had revested in the debtor, notwithstanding.

And, while the Fourth Circuit Court of Appeals did not discuss the issue at length it agreed with the conclusion.   The Court wrote: "[W]e agree with the lower courts and the Chapter 13 trustee that a 100 percent payment to the creditors meets the best interest of the creditors under the circumstances of this case." Murphy, 474 F2d. at 153.

Finally, an analysis of the Chapter 7 Test reveals that it properly includes the non-exempt value of property of the estate even if it has revested in the debtor.  The Chapter 7 Test requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim *if the estate of the debtor were liquidated under chapter 7* of this title on such date." 11 U.S.C. § 1325(a)(4) (Emphasis added.).  The test requires that the unsecured creditors in Chapter 13 receive as much as they would if the estate were liquidated under Chapter 7.  The requirement

is presented in the subjunctive, and so it is hypothetical. The Chapter 7 Test is a method to be used for calculating a minimum payment to unsecured creditors that is based on a fictitious circumstance, that is, that the debtor is a debtor under chapter 7. Under Chapter 7, there would be no plan, so there would be no revestiture. Consequently, revestiture is not an impediment to the application of the Chapter 7 Test as applied in chapter 13, even if the property being considered under that test has revested in the debtor.

E.

Finally, the trustee disagrees with the statement in the Memorandum that "[n]othing has changed in the Debtors' financial situation since they filed their bankruptcy petition that would increase the amount of non-exempt property available to unsecured claimants if this were a chapter 7 case." The trustee concludes from this statement that the Memorandum asserts that because the real property had been held as tenants by the entirety, (a) the cash proceeds from the sale of the Real Property cannot be considered in the analyzing the Debtors' change in financial condition, and (b) the cash proceeds from the sale of the Real Property cannot be considered in analyzing whether the Debtors have the ability to make the payments under the modified plan, and (c) the cash proceeds from the sale of the Real Property cannot not be treated as disposable income.

The quoted language from the Memorandum concerns the consideration of the Chapter 7 Test as promulgated at Section 1325(a)(4) and made applicable to motions to modify a confirmed plan under Section 1329(b). The language in the Memorandum does not concern the analysis of any change in a debtor's financial condition as required under the Threshold Test. Further, the quoted language from the Memorandum does not concern the feasibility test.

18

We turn now to what this Court believes is the crux of the trustee's concern regarding the Memorandum, that is that the Memorandum implies that the cash that the Debtors received from the sale of the Real Property cannot be treated as disposable income.  The trustee apparently believes that the cash proceeds received by the Debtors from the sale of the Real Property constitute income that should be considered "disposable income" under Section 1325(b).  The Court disagrees.

In chapter 13, a plan must provide for the payment of all of a debtor's projected disposable income.  11 U.S.C. § 1325(b)(1).  The term "disposable income" means current monthly income received by the debtor less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.  11 U.S.C. § 1325(b)(2).  "Current monthly income" means the average monthly income from all sources that the debtor receives derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case.  11 U.S.C. § 101(10A).

Disposable income, then, is the debtor's currently monthly income less certain expenses. There is nothing in this definition that would include proceeds derived from the sale of assets held by the debtor on the date of petition.

The trustee asserts that exempt assets may constitute disposable income and cites a number of opinions in favor of the assertion.  The issue, however, is not whether the "assets" are exempt, the issue is whether the proceeds from the sale of the Real Property constitute disposable income that may be administered in chapter 13 or property that is held by the debtor on the date of petition that may be administered in chapter 7.

While the issue is not one that has been resolved in a homogenous manner by all courts,

19

the Fourth Circuit Court of Appeals has addressed this issue of the distinction between property

of the estate held by a debtor on the date of petition that may be administered by a Chapter 7

trustee and income received by the debtor during the pendency of a Chapter 13 plan.  See In re

Solomon, 67 F.3d 1128 (4th Cir. 1995).

In Solomon, on the date of petition the debtor held three individual retirement accounts

("the IRAs") that totaled more than $1,400,000.00.  The IRAs could not be considered under the

Chapter 7 test because they were exempt under state law.  The trustee objected to the

confirmation of the plan because the debtor did not include that portion of the IRAs that the

debtor was eligible to withdraw from the account.  The court overruled the trustee's objection

holding that disposable income only includes income that a debtor is actually receiving.

The Fourth Circuit Court of Appeals continued:

> Although they are not a source of regular, periodic income, Solomon's IRAs are
> assets of the estate, much like a checking or savings account. See Education Assistance
> Corp. v. Zellner, 827 F.2d 1222, 1226 (8th Cir.1987) ( $6,000 lump-sum payment from
> retirement fund, which Chapter 13 debtor transferred into IRA, was asset of the estate
> rather than disposable income); see also Official Bankr. Form 6, Schedule B (Personal
> Property) (listing "[i]nterests in IRA, ERISA, Keogh, or other pension or profit sharing
> plans" as personal property of the debtor); Official Bankr. Form 6, Summary of
> Schedules (debtor's real and personal property constitute assets of the estate). *In fact,*
> *Solomon listed each of his IRAs as personal property in the schedules submitted to the*
> *bankruptcy court. In this regard, the IRAs are relevant not to the "disposable income"*
> *requirement, but rather to the "best interests of creditors" prerequisite for confirmation*
> *of a Chapter 13 plan.* See 11 U.S.C. § 1325(a)(4) (unsecured creditors must receive no
> less in a Chapter 13 proceeding than they would in a Chapter 7 liquidation proceeding).
> . . .
> Here, the debtor's IRAs would be "exempt" assets and thus unavailable to
> creditors in a Chapter 7 liquidation [because they are exempt under Maryland law].
>  . . .
>  Because the IRAs would be unavailable to creditors in a Chapter 7 proceeding by
> virtue of the state law exemption, creditors would receive nothing from those accounts if
> Solomon's non-exempt assets were to be liquidated. Thus, preserving the IRAs from the
> claims of Solomon's creditors in this Chapter 13 proceeding is both logically sound and
> in keeping with the Code. In fact, in a Chapter 7 proceeding, Solomon's creditors would

be entitled to the proceeds from liquidation of non-exempt assets worth approximately $40,000. The $45,000 he proposes to pay the creditors under his Chapter 13 plan thus appears to satisfy the "best interests of creditors" prerequisite for confirmation. The Supreme Court has emphasized that the mere happenstance of bankruptcy should not result in a windfall to creditors.  Patterson v. Shumate, 504 U.S. 753, 764, 112 S.Ct. 2242, 2249-50, 119 L.Ed.2d 519 (1992).  Nor, we think, should a debtor's choice to proceed under Chapter 13 invariably entitle creditors to more than they would receive in Chapter 7, contrary to the mandate of the Bankruptcy Code.

Solomon, 67 F.3d at 1132-1133 (Emphasis added.).

To summarize, all of debtor's "assets", both those that the debtor currently owns, and those that the debtor expects to receive in the future must be scheduled.   Those assets that a debtor owns on the date of petition are scheduled under Schedule A (real property) or schedule B (personal property).  Those assets that the debtor anticipates receiving in the future are scheduled on Schedule I (Income).  In Chapter 7, the trustee administers the assets that are scheduled on Schedules A and B (real and personal property), less those assets that are exempted under statute.   In Chapter 13, the trustee administers those assets that are scheduled on Schedule I (future income) less expenses that are allowed by statute.  In Solomon, the Fourth Circuit Court of Appeals made it clear that a Chapter 13 trustee does not have authority to administer assets that are properly scheduled on Schedule A or B.[9]

In the case at bar, the Real Property is akin to the IRAs in Solomon.  The Debtors properly scheduled the Real Property as property of the estate on Schedule A.  It is an asset that would be available to creditors in a chapter 7 were it not exempt.  As such, it does not constitute income in Chapter 13.  The same is true for the proceeds from the sale of the Real Property, as

---

[9]        As noted, however, this does not mean that the value of property properly scheduled on Schedule A and B cannot affect the amount that a Chapter 13 debtor must pay the trustee.  If, under the chapter 7 test, the value of the property that would be administered if the debtor were a debtor under chapter 7 is greater than the value of property to be distributed under the plan, as of the date of petition, then the debtor must pay that greater amount.

they are also exempt. <u>See</u> <u>In re Ballard</u> 65 F.3d 367, 379 (4th Cir. 1995) ("[A]bsent "an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties.") (Citing <u>Oliver v. Givens</u>, 204 Va. 123, 129 S.E.2d 661, 663 (1963).).

Consequently, it is concluded that the Real Property, and the proceeds from the sale thereof, may only be considered when applying the Chapter 7 test, not when calculating the Debtor's disposable income.  Nothing in <u>Murphy</u> overrules the Fourth Circuit Court of Appeals' analysis in <u>Solomon</u> on this issue.

III.

Once a chapter 13 plan has been confirmed, the rule in <u>Murphy</u> provides a shield to prevent a trustee or creditor from filing a motion to modify a debtor's chapter 13 plan when the debtor has experienced no more than an unsubstantial or anticipated change in his or her financial condition.  It does not provide a sword that permits a trustee or creditor to force a debtor to pay more to their unsecured creditors than is required by statute.

The motion to alter or amend will be denied for the foregoing reasons, and because that motion does not seek to alter or amend the order in this matter.

**<u>ORDER</u>**

The chapter 13 trustee's motion to amend the Memorandum and Order on the trustee's motion to modify the Debtors' chapter 13 plan is denied.

So ORDERED.

Upon entry of this Memorandum and Order the Clerk shall forward a copy to H. David Cox, Esq., counsel for the debtor, and the chapter 13 trustee.

Entered on this  21st  day of June, 2010.

William E. Anderson
United States Bankruptcy Judge